UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80058-CIV-COHN/SELTZER

ANESTHESIA & CRITICAL CARE
SPECIALISTS OF PALM BEACH, P.A.,

          Plaintiff,

vs.

AETNA HEALTH, INC.,

          Defendant.
_____/

## ORDER GRANTING MOTION TO REMAND

**THIS CAUSE** is before the Court upon Plaintiff's Motion to Remand [DE 11] ("Motion"). The Court has carefully considered the Motion, Defendant's Memorandum in Opposition to Motion to Remand [DE 16] ("Opposition"), Plaintiff's Reply to Defendant's Memorandum in Opposition to Motion to Remand [DE 21] ("Reply"), the parties' related submissions, the record, and is otherwise advised in the premises.

### I. BACKGROUND

Plaintiff is a professional association of doctors and nurses who provide anesthesia services within Palm Beach County. Compl. ¶ 1. Plaintiff provides both emergency and non-emergency anesthetic services to patients insured by Defendant. Id. ¶ 6. The Complaint refers to such patients as "Shared Patients." Plaintiff "did not have a contract with [Defendant] which would govern the compensation owed by Shared Patients (and/or contractually by [Defendant]) to [Plaintiff] for its anesthetic services." Id. ¶ 7.

After providing services to the Shared Patients, Plaintiff would bill Defendant for such services. Id. ¶ 11. Plaintiff's Complaint is substantially based on the following allegations:

> [Defendant] in turn, paid [Plaintiff] in an arbitrary manner. It did not pay in accordance with either: [Fla. Stat.] § 641.513(5) (Part III) which governs payment requirements for emergency services by non-contract providers or [Fla. Stat.] § 641.3155 (Part I) which requires prompt payment of claims, and specifically, [Fla. Stat.] § 641.3155(8) (Part I) which governs allowance for billing of patients by providers once a maximum of 60 days has lapsed, or the HMO's internal dispute process has run its course (whichever comes first).
>
> Instead of allowing [Plaintiff] to seek co-payments and/or 'balance bill' Shared Patients, [Defendant] engaged in a pattern and practice of leveling unfounded complaints against [Plaintiff] to the Florida Department of Health, while defaming [Plaintiff] to Shared Patients.

Id. ¶¶ 12-13.

On September 24, 2009, Plaintiff filed a seven-count Complaint against Defendant in the Circuit Court in and for Palm Beach County, Florida. Plaintiff's Complaint includes the following causes of action: 1) declaratory relief pursuant to Fla. Stat. § 86.021; 2) negligent violation of Fla. Stat. § 641.513; 3) negligent violation of Fla. Stat. § 641.3155; 4) negligent violation of Fla. Stat. § 641.3903; 5) defamation; 6) quantum meruit; and 7) unjust enrichment.

On January 19, 2010, Defendant removed the case alleging federal jurisdiction. See DE 1. The Notice of Removal states that Defendant "offers HMO plans to Florida residents through Group Agreements entered into with employers [ ] to provide HMO medical benefits to the Contract Holders' employees. The HMO medical benefit plans are part of the Contract Holders' employee welfare benefit plans." Notice of Removal at ¶ 6. Defendant contends that all of the Shared Patients identified by Plaintiff "are either participants or dependents of participants in the employee welfare benefit plans . . . ." Id. ¶ 8. "The employee welfare benefit plans are governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001-1461 ('ERISA')." Id.

In addition, the Notice of Removal states as follows:

2

> The terms of the employee welfare benefit plans govern the state of reimbursement. The plans provide that coverage is provided in accordance with the reasonable exercise of [Defendant's] business judgment, consistent with applicable law. The identified employees or dependents have assigned their benefits to [Plaintiff], authorizing [Plaintiff] to seek payment directly from [Defendant].

Id. 9.

On February 18, 2010, Plaintiff filed the instant Motion arguing that "[a]ll seven causes of action [asserted in the Complaint] are based upon Florida law." DE 11 at 1. Plaintiff states that it "does not allege that it has standing to sue pursuant to ERISA in the Complaint. Nor does Plaintiff allege that it is an assigned beneficiary." Id. at 3. Instead, Plaintiff argues that third-party claims of healthcare providers pursuant to the statutes cited in the Complaint "are viable state law claims which can be brought in state court." Id. at 2.

In its Opposition, Defendant contends that "[o]nly the existence of [ ] written authorizations assigning Plan benefits entitled Plaintiff to be paid directly for the non-emergency services it provided to members of the Plans administered by [Defendant]." DE 16 at 2 (emphasis added). According to Defendant, "[a]bsent the written assignment of benefits, [Plaintiff] had no independent right to direct reimbursement from [Defendant] for non-emergency services." Id. Defendant acknowledges that "[o]nly Count II for negligent violation of Florida Statute 641.513 [for emergency services] and Count V for Common Law Defamation are state law claims that may not be completely preempted . . . ." Id. at 13. Defendant, however, argues that removal is nonetheless proper because the claims "that may arguably fall outside the scope of ERISA's complete preemption should be joined with the removable claims pursuant to 28 U.S.C. § 1441(c)." Id.

3

In its Reply, Plaintiff asserts that this is "a declaratory action to determine how a state statute is to be interpreted." DE 21 at 1-2. Plaintiff states that Defendant "appears to acknowledge that courts have allowed a private cause of action pursuant to Florida Statute § 641.513 (for emergency services) without federal ERISA preemption." Id. at 3. With respect to non-emergency claims, Plaintiff argues the following:

> [Plaintiff's] claims can be founded upon the assertion that [Plaintiff] is a third party beneficiary of [Defendant] and its subscriber contracts, and that [Plaintiff] is entitled to enforce the applicable provisions of the HMO Act (Florida Statute § 641.3155) by virtue of the common law principle that contracts governed by regulatory statutes are deemed to incorporate relevant portions of such statutes in their terms.

DE 21 at 4. In addition, Plaintiff argues that the defamation claim alleges that Plaintiff "has suffered damages to its business and reputation which result from [ ] letters which contain false statements to third parties." Id. at 6. As such, the claim "is not related to ERISA." Id.

## II. DISCUSSION

### A.   Removal

Federal courts are courts of limited jurisdiction. District courts have original federal question jurisdiction only over civil cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Pursuant to § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court. 28 U.S.C. § 1441(a).

In a removed case, the burden of demonstrating federal jurisdiction rests upon the defendant, as it is the party urging that the action is properly before the federal tribunal. See Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1373 (11th Cir.1998). If the defendant fails to carry its burden, the court must remand the action to state court.

See 28 U.S.C. § 1447(c). Furthermore, "removal statutes are construed narrowly" and all "uncertainties are resolved in favor of remand." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).

**B.    ERISA Preemption**

Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, see ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981)). Under ERISA, two types of preemption may arise: conflict preemption and complete preemption.

    1.    Conflict Preemption

"Conflict preemption, also known as defensive preemption, is a substantive defense to preempted state law claims." Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1344 (11th Cir. 2009) (citing Jones v. LMR Int'l, Inc., 457 F.3d 1174, 1179 (11th Cir. 2006)). Conflict preemption arises from ERISA's express preemption provision, § 514(a), which preempts any state law claim that "relates to" an ERISA plan. 29 U.S.C. § 1144(a).

"Because conflict preemption is merely a defense, it is not a basis for removal." Anthem, 591 at 1344 (citing Gully v. First Nat'l Bank, 299 U.S. 109, 115-16 (1936)); accord Ervast v. Flexible Prods. Co., 346 F.3d 1007, 1012 n.6 (11th Cir. 2003) (stating

5

that "defensive preemption . . . provides only an affirmative defense to state law claims and is not a basis for removal"). Accordingly, issues of conflict preemption alone do not support federal jurisdiction. See Kemp v. IBM, 109 F.3d 708, 714 (11th Cir. 1997) ("Without any basis for federal jurisdiction over a case, a federal court cannot decide a preemption defense. Any defensive preemption arguments [defendant] seeks to raise will have to be decided, if at all, in state court.").

2.   Complete Preemption

When a claim, though couched in the language of state law, implicates an area of federal law for which Congress intended a particularly powerful preemptive sweep such as ERISA, the cause is deemed federal no matter how pleaded. See Met. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987). This exception to the well-pleaded complaint rule is called "complete preemption." See id.

The Eleventh Circuit contrasts the two doctrines as follows:

> [Conflict] preemption may be invoked in both state and federal court as an affirmative defense to the allegations in a plaintiff's complaint. Such a defense asserts that the state claims have been substantively displaced by federal law. Complete preemption, on the other hand, is a doctrine distinct from ordinary preemption. Rather than constituting a defense, it is a narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims. It looks beyond the complaint to determine if the suit is, in reality, purely a creature of federal law.

Stern v. International Business Machines Corp., 326 F.3d 1367, 1371 (11th Cir. 2003) (citation omitted) (emphasis added).

To establish complete preemption in the present case, Defendant must show that the state law causes of action fall within the scope of ERISA § 502(a). See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987). ERISA § 502(a) provides a cause of action by a participant or beneficiary "to recover benefits due . . . under the terms of the

6

plan, to enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 502(a) has such "extraordinary" preemptive power that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66 (1987). Consequently, any "cause[ ] of action within the scope of the civil enforcement provisions of § 502(a) [is] removable to federal court." Id. at 66. A court must look beyond the face of the complaint "to determine whether the real nature of the claim is federal, regardless of plaintiff's [state law] characterization." See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 397 n.2 (1981) (citation omitted).

The Eleventh Circuit Court of Appeals has established a four-part test to determine whether ERISA completely preempts a state-law claim. See Butero v. Royal Life Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir. 1999). The test requires that 1) a relevant ERISA plan must be implicated; 2) the plaintiff must have standing to sue under the plan; 3) the defendant must be an ERISA entity; and 4) the complaint seeks relief akin to what is available under ERISA ("the Butero Test"). Id.

After Butero was decided, the Supreme Court set forth the following inquiry for complete preemption:

> [I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls within the scope of ERISA § 502(a)(1)(B). In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

7

Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004). "The Davila test thus requires two inquiries: (1) whether the plaintiff could have brought its claim under § 502(a); and (2) whether no other legal duty supports the plaintiff's claim." Anthem, 591 F.3d at 1345.

C. **Claims Brought by Healthcare Providers**

Before engaging in analysis of Plaintiff's specific claims, the Court sets forth several general observations. First, "healthcare provider claims are usually not subject to complete preemption because healthcare providers generally are not considered 'beneficiaries' or 'participants' under ERISA." Anthem, 591 F.3d at 1346 (quotation omitted); see also Lordmann Enters. v. Equicor, Inc., 32 F.3d 1529, 1534 (11th Cir. 1994) ("ERISA does not provide a cause of action for aggrieved health care providers that treat ERISA participants."); Rocky Mountain Holdings, LLC v. Blue Cross and Blue Shield of Florida, Inc., No. 6:08-cv-686-Orl-19KRS, 2008 WL 3833236, at *7 (M.D. Fla. Aug. 13, 2008) ("'Courts have, with near unanimity, found that independent state law claims of third party healthcare providers are not preempted by ERISA.'") (quoting Med. & Chirurgical Facility of the State of Md. v. Aetna U.S. Healthcare, Inc., 221 F. Supp. 2d 618, 619-20 (D. Md. 2002)).

Second, "a healthcare provider may acquire derivative standing to sue under ERISA by obtaining a written assignment from a 'participant' or 'beneficiary' of his right to payment of medical benefits." Id. at 1347. "Claims for benefits by healthcare providers pursuant to an assignment are thus within the scope of § 502(a)." Id. Third, "a provider that has received an assignment of benefits and has a state law claim independent of the claim arising under the assignment holds two separate claims. In such a case, the provider may assert a claim for benefits under ERISA, the state law

8

claim, or both." Id. In other words, "so long as the provider's state law claim does not fall within § 502(a), the existence of the assignment is irrelevant to complete preemption if the provider asserts no claim under the assignment." Id.

Despite the analysis announced by the Supreme Court in Davila, courts in the Eleventh Circuit continue to employ the Butero Test. See, e.g., Evans v. Infirmary Health Servs., 634 F. Supp. 2d 1276 (S.D. Ala. 2009); In re United States Sugar Corp. Litig., 669 F. Supp. 2d 1301 (S.D. Fla. 2009). Indeed, the parties herein have set forth their arguments in the framework established by the Butero Test. Specifically, Defendant argues that Plaintiff's non-emergency claims meet all four prongs of the Butero Test and thus provide a basis for federal jurisdiction. Plaintiff, however, contends that the non-emergency claims fail to satisfy the second and fourth factors of the test.

D.     **Analysis of Plaintiff's Motion to Remand**

Defendant acknowledges that "Count II for negligent violation of Florida Statute 641.513 and Count V for Common Law Defamation are state law claims that arguably may not be completely preempted, but are properly subject to the Court's supplemental jurisdiction." DE 16 at 13. As discussed below, several courts in this jurisdiction have held that claims brought by healthcare providers pursuant to Fla. Stat. § 641.513 do not provide a basis for federal jurisdiction.

With respect to the defamation claims, Plaintiff alleges that Defendant "engaged in a pattern and practice of leveling unfounded complaints against [Plaintiff] to the Florida Department of Health, while defaming [Plaintiff] to the Shared Patients." Compl. ¶ 13. As a result, Plaintiff alleges that it "has suffered damages to its business and reputation." Id. 51. Clearly, Plaintiff's defamation claim could not be brought under § 502(a) nor does it seek relief akin to what is available under ERISA. Moreover,

although it may be arguable whether Plaintiff's defamation claim is subject to conflict preemption, several cases[1] have held that claims similar to Plaintiff's do not provide basis for federal jurisdiction.[2]

Accordingly, Plaintiff's Motion for Remand turns on the issue of whether Plaintiff's claims for non-emergency services brought pursuant to Fla. Stat. § 641.3155 are subject to complete preemption. Therefore, the Court must determine whether Plaintiff's claims satisfy the second and fourth requirements of the Butero Test.

1. Standing

As to the second factor, the Butero Test requires that the plaintiff has standing to sue under the relevant ERISA plan. See Jones, 457 F.3d at 1178. ERISA Section 502(a) provides for preemption in suits for benefits among ERISA entities. See Pilot Life Ins. Co., 481 U.S. at 54 ("The policy choices reflected in the inclusion of certain remedies and the exclusion of others . . . would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."). The only parties with standing to sue under ERISA

---

[1] See Stevenson v. Bank of N.Y. Co., --- F.3d ----, Docket No. 09-1681-cv 2010 WL 2365679 (2d Cir. June 15, 2010) (finding defamation claim not preempted by ERISA); Tex. Health Res. v. Group & Pension Adm'rs, Inc., No. 4:09-CV-547-A, 2009 WL 4667117, at *4 (N.D. Tex. Dec. 8, 2009) (finding defamation claim was not subject to ERISA preemption because "plaintiffs here challenge only the allegedly defamatory communication in the letter from defendant to plaintiffs' patients, and the resulting consequences, not any determination of coverage or benefits"); Hahn v. Rauch, 602 F. Supp. 2d 895, 909 (N.D. Ohio 2008) ("It is beyond cavil that Plaintiff's complaint, which relies exclusively on state common law and asserts claims for defamation and tortious interference, does not seek to enforce the terms of an employee benefit plan and is not equivalent to an ERISA enforcement action.").

[2] Count IV of the Complaint is a claim pursuant to Fla. Stat. § 641.3903 for unfair claims handling. See Compl. ¶¶ 38-43. Section 641.3903 prohibits practices such as misrepresentations, false advertising and defamation. Count IV is based on allegations substantially similar to those that form the basis of Count V for common law defamation. Accordingly, Count IV also does not provide a basis for federal jurisdiction.

are those listed in the civil enforcement provision of ERISA, codified at 29 U.S.C. § 1132(a)(1)(B).  Thus, to have standing, a plaintiff must be either a "participant" or a "beneficiary" of the ERISA plan.  Hobbs v. Blue Cross Blue Shield of Ala., 276 F.3d 1236, 1241 (11th Cir. 2001).

Generally, healthcare providers like Plaintiff lack independent standing under ERISA's statutory scheme because they are not ordinarily considered "beneficiaries" or "participants."  See Cagle v. Bruner, 112 F.3d 1510, 1514 (11th Cir. 1997).  They can, however, acquire derivative standing when they receive assignments of benefits from beneficiaries or participants of an ERISA plan.  Id. (holding that healthcare provider had derivative standing to bring an action against an ERISA plan insurance fund where the record showed that the provider had been assigned the right to payment of medical benefits).

Defendant argues that "[t]he claims asserted by [Plaintiff] in the majority of counts can only be brought on the basis of an assignment of the patient's rights.  That is, other than for emergency services, for which payment is statutorily mandated, [Defendant] has no duty, statutory or otherwise, to pay [Plaintiff] for services provided to its members absent direction by its members to do so."  DE 16 at 9 (emphasis in original).  Plaintiff affirms that it possesses valid assignments from many of the Shared Patients.  See DE 21 at 3.  Nevertheless, Plaintiff asserts that it does not rely on (nor even allege the existence of) such assignments as a basis for any of the claims raised in the Complaint.  Id.  Instead, Plaintiff seeks to enforce its rights as a third-party beneficiary under the relevant Florida statutes.  Id.  Therefore, Plaintiff argues this case is similar to C.N. Guerriere, M.D., P.A. v. Aetna Health, Inc., No. 8:07-CV-1443-T-27MAP, 2007 WL 3528366 (M.D. Fla. Nov. 15, 2007), which remanded a healthcare provider's claims back to state court.

11

In Guerriere, the court found that the plaintiff's claim was "brought pursuant to Fla. Stat. § 641.513(5)," which creates a private cause of action in favor of medical providers who provide emergency services. Id. at *2. Further, the court found that the plaintiff did "not rely on an assignment of benefits" and brought the action "directly, not in a derivative capacity." Id. In a similarly-named case, a separate district judge found that a purported assignment was insufficient to confer standing because "[e]ven if the plaintiff obtained an assignment of benefits, the plaintiff [did] not rely on the assignment and [did] not need to rely on the assignment to prosecute his state law claim." C.N. Guerriere v. Aetna Health, Inc., No. 8:07-cv-1439-T-23TBM, 2007 WL 3334346, at *2 (M.D. Fla. Nov. 8, 2007) (granting motion to remand).[3]

"Even if [Plaintiff] may have such assignments, their existence would be irrelevant because [Plaintiff] does not rely on such assignments for the claims stated in the Complaint." Sheridan Healthcorp., Inc. v. Neighborhood Health Partnership, Inc., 459 F. Supp. 2d 1269, 1274 (S.D. Fla. 2006); accord Caterpillar, Inc. v. Williams, 482 U.S. 386, 395 (1987) (holding that "[a]s masters of the complaint" plaintiffs may choose to not include references to certain rights to avoid complete preemption); Hill v. BellSouth Telecomm., Inc., 364 F.3d 1308, 1314 (11th Cir. 2004) ("[T]he plaintiff is the master of the complaint, free to avoid federal jurisdiction by pleading only state claims

---

[3] See also Rocky Mountain Holdings, LLC v. Blue Cross and Blue Shield of Florida, Inc., No. 6:08-cv-686-Orl-19KRS, 2008 WL 3833236, at *14 (M.D. Fla. Aug. 13, 2008) ("[T]o confer standing to sue under ERISA, the assignment of rights must be relevant to the claims being litigated."); Medical & Chirurgical Faculty, 221 F. Supp. 2d at 621 ("Plaintiffs are asserting in this action an independent statutory right of health care providers to receive payment consistent with the statutory formulas, not the right to any benefits due to plan participants. It is undisputed that these statutory rights are not available to plan participants, and thus, could not be assigned by those participants.").

even where a federal claim is also available.") (citations omitted).[4]

Defendant argues that "<u>Guerriere</u> is distinguishable because the court held only that Florida Statute § 641.513 creates a private right of action against HMO insurers for healthcare providers who have provided <u>emergency services</u> to patients covered under applicable HMO plans. Here, [Plaintiff] has asserted claims for both emergency and non-emergency services." <u>Id.</u> at 11 (emphasis in original). Defendant's argument, however, is inconsistent with recent Florida law, which now allows a third-party claim for non-emergency services under § 641.3155, Florida Statutes.

In <u>Health v. Westside EKG Assocs.</u>, 944 So. 2d 188 (Fla. 2006), the Florida Supreme Court held that a healthcare provider may bring a claim to enforce the provisions of Florida's Health Maintenance Organization Act. Specifically, the court held the following: "A medical service provider may bring a cause of action as a third-party beneficiary to the contract between the health maintenance organization and its subscriber based on allegations that the health maintenance organization failed to comply with section 641.3155, Florida Statutes (2001), the 'prompt pay provisions' of the Health Maintenance Organization Act." <u>Id.</u> at 191. The <u>Westside</u> case reached the Florida Supreme Court at the pleading stage. Accordingly, the court did not conclude whether or not the <u>Westside</u> plaintiff's claims prevail. Instead the court ruled that healthcare providers "are not precluded as a matter of law from alleging and establishing that the HMO contract evinces a 'clear and manifest intent' to 'primarily and directly benefit' them." <u>Id.</u> at 198.

Moreover, courts in this district have held specifically that healthcare provider

---

[4] See also <u>Children's Hosp. Corp. v. Kindercare Learning Ctr., Inc.</u>, 360 F. Supp. 2d 202, 207 (D. Mass. 2005) (holding that even though hospital was the assignee to its patients' ERISA benefits, Section 502(a) standing was not proper because the hospital did not rely on the assignments in its complaint).

13

claims under Fla. Stat. § 641.3155 are not subject to complete preemption. See Boca Raton Community Hosp., Inc. v. Great-West Healthcare of Fla., No. 06-cv-80750-DTKH, 2008 WL 728538, at *7 (S.D. Fla. Mar. 17, 2008) ("[T]he court rejects the defendant's ERISA preemption argument and shall allow the plaintiff's state common law and statutory claims [including a claim under Fla. Stat. § 641.3155] to stand . . . ."); Palmetto Pathology Servs., P.A. v. Health Options, Inc., 05-cv-22265-DLG (S.D. Fla. Jan. 17. 2006) (order granting motion to remand after concluding that a healthcare provider's third-party beneficiary claim under Fla. Stat. § 641.3155 was not completely preempted). In light of the case law discussed herein, the Court finds that Plaintiff stands in its own shoes as a third-party beneficiary to assert its non-emergency claims rather than as an assignee of the Shared Patients. Accordingly, the second requirement of the Butero Test is not satisfied.

2.   Relief

The fourth factor of the Butero Test requires the Defendant to demonstrate that the Complaint seeks relief akin to what is available under ERISA. Removal is improper where a plaintiff's requested relief is based "on legal duties that are independent from duties under any benefit plan established under ERISA . . . ." Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 943 (9th Cir. 2009).[5]

A number of courts in the Eleventh Circuit have found that the Florida statutes raised in the Complaint are independent from duties under any ERISA plan. "Simply put, the statute is expressly disconnected from the terms and provisions of any

---

[5] In Marin, the Ninth Circuit held that removal was improper based, in part, on the following reasoning: "The Hospital does not contend that it is owed this additional amount because it is owed under the patient's ERISA plan. Quite the opposite. The Hospital is claiming this amount precisely because it is not owed under the patient's ERISA plan. The Hospital is contending that this additional amount is owed based on its alleged oral contract with MBAMD." Marin, 581 F.3d at 947.

14

particular ERISA plan, as it mandates reimbursement to non-participating emergency medical providers. Similar relief is unavailable under ERISA." <u>C.N. Guerriere, M.D., P.A.</u>, 2007 WL 3528366, at *2 (remanding to state court a medical provider's complaint bringing a claim under Fla. Stat. § 641.513).[6] "Plaintiff is neither a participant in AETNA's plan nor a beneficiary of AETNA's plan. Plaintiff's statutory cause of action for reimbursement for emergency medical services is therefore entirely independent of the terms of AETNA's plan." <u>Id.</u>

Likewise, in <u>Rocky Mountain Holdings</u>, the court remanded the case finding that the "issue is whether Defendants reimbursed the providers at a rate consistent with Florida law. Thus, Plaintiffs, as healthcare providers, are not challenging the denial of benefits under an ERISA plan." <u>Rocky Mountain Holdings</u>, 2008 WL 3833236 at *5;[7]

---

[6] For example, Fla. Stat. § 641.513 includes, *inter alia*, requirements for reimbursement for emergency services and provides as follows:

> (5) Reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:
>
> (a) The provider's charges;
>
> (b) The usual and customary provider charges for similar services in the community where the services were provided; or
>
> (c) The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.

Fla. Stat. § 641.513(5).

[7] Section 641.3155 governs the prompt payment of non-emergency claims and its provisions are designed primarily for healthcare providers and HMO's rather than ERISA beneficiaries. For example, the statute begins by stating that "the term 'claim' for a noninstitutional provider means a paper or electronic billing instrument submitted to the health maintenance organization's designated location . . . ." Fla. Stat. 641.3155(1). Further, the statute provides as follows: "All claims for payment, whether electronic or nonelectronic, must be mailed or electronically transferred to the secondary organization within 90 days after final determination by the primary organization. A provider's claim is considered submitted on the date it is electronically

15

accord Medical and Chirurgical Faculty, 221 F. Supp. 2d at 621 ("What is at issue is the amount of payment, and the source for that determination is the statutes, not the HMO plans."). Therefore, the Court finds that Plaintiff's claims do not seek relief akin to what is available under ERISA.[8]

### III. CONCLUSION

Undoubtedly, the claims raised in the Complaint arise out of the relationship amongst Plaintiff, Defendant and the Shared Patients. Significantly, however, Plaintiff is not attempting to step into the Shared Patient's shoes and enforce rights under ERISA plans. Instead Plaintiff is standing in its own shoes and seeking to enforce rights provided under Florida law. See Rocky Mountain Holdings, 2008 WL 3833236, at *4 ("As Plaintiffs repeatedly emphasize, they are not attempting to stand in the shoes of the patients, and their claims are unrelated to the rights of the patients. Rather, Plaintiffs are suing under a Florida statute that operates independently of the terms of the health plan."). Therefore, even looking beyond the Complaint, the Court cannot find that Plaintiff's suit is "purely a creature of federal law." Stern, 326 F.3d at 1371.

In Davila, the Supreme Court found that "where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls within the scope of ERISA § 502(a)(1)(B)." Davila, 542 U.S. at 210. Here, the Plaintiff based its claims on independent duties under Florida statutory law, and the construction of such duties is a proper function of Florida state courts. While Defendant may argue that Plaintiff's

---

transferred or mailed." Fla. Stat. 641.3155(2)(b).

[8] The Complaint also brings equitable claims such quantum meruit (Count VI) and unjust enrichment (Count VII). Similar to Plaintiff's statutory claims, the Court concludes that Plaintiff's equitable claims are not completely preempted. See Boca Raton Community, 2008 WL 728538, at *7 (rejecting ERISA preemption argument as to plaintiff's equitable claims including quantum meruit); Palmetto Pathology Servs., 05-cv-22265-DLG (finding that a healthcare provider's claims, including a claim for quantum meruit, were not completely preempted by ERISA).

claims are subject to conflict preemption, "[a]ny defensive preemption arguments [Defendant] seeks to raise will have to be decided, if at all, in state court." Kemp v. IBM, 109 F.3d at 714. The Court concludes, however, that the claims in Plaintiff's Complaint, as currently pled, are not completely preempted and thus there is no basis for this Court to exercise jurisdiction. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Remand [DE 11] is **GRANTED**. This case is **REMANDED** to the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County Florida. It is further

**ORDERED AND ADJUDGED** that any pending motions are **DENIED as moot**. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 14TH day of July, 2010.

JAMES I. COHN
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of record